UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LUC VETS DIAMANT,

      Plaintiff,

 -against-

DYNASTY DIAMOND & JEWELRY GROUP
CORP.,

      Defendant.
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/14/06

04 Civ. 3844 (GBD) (DF)

**REPORT AND
RECOMMENDATION**

**TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.**

 On May 20, 2004, Plaintiff Luc Vets Diamant ("Plaintiff"), filed a Complaint with this Court to recover damages from Defendant Dynasty Diamond & Jewelry Group Corporation ("Defendant"), which had failed to return diamonds after Plaintiff delivered them to Defendant on consignment "for the sole purpose of examination and inspection" by Defendant. (*See* Complaint ("Compl."), filed May 20, 2004, ¶ 12 (Dkt. 1).) Defendant was served with a Summons and Complaint through the Office of the Secretary of State of New York on June 9, 2004, pursuant to Section 306(b) of the New York Business Corporation Law and Rule 4(e)(1) of the Federal Rules of Civil Procedure.

 Defendant did not move, answer, or otherwise respond to the Complaint, and, on January 13, 2005, Judge Daniels granted Plaintiff a default judgment, referring the matter to me to conduct an inquest and to report and recommend concerning damages. (*See* Dkt.5.) On April 8, 2005, I issued a Scheduling Order requiring Plaintiff to serve and file Proposed Findings of Fact and Conclusions of Law ("Proposed Findings") no later than May 9, 2005. (*See* Dkt. 7.) In that Order, I cautioned Defendant that if, by June 8, 2005, it did not respond to Plaintiff's submissions or contact my chambers in writing to request an in-court hearing, it would be my

intention to issue a report and recommendation on the basis of Plaintiff's written submissions alone.

On May 9, 2005, Plaintiffs filed their Proposed Findings and supporting papers. (*See* Proposed Findings, filed May 9, 2005 (Dkt. 8); *see also* Declaration of Jeffrey A. Kimmel, Esq., dated May 6, 2005 ("Kimmel Decl.") (Dkt. 10).) To date, Defendant has not filed any response to any of Plaintiffs' submissions, nor has it contacted my chambers to request a hearing.

For the reasons that follow, I recommend that, on the default judgment, Plaintiff be awarded damages and attorneys' fees from Defendant as calculated below.

## BACKGROUND

As alleged in the Complaint, and as supported by the documentation submitted by Plaintiffs on this inquest, the relevant facts are as follows:

Plaintiff is a Belgian sole proprietorship and a wholesaler of diamonds. (Compl. ¶¶ 1-3.) Defendant is a New York corporation that is and/or was in the business of manufacturing and selling jewelry. (*Id.* ¶¶ 3-4.) In about October 2003, Defendant requested and Plaintiff agreed to deliver three shipments of diamonds (collectively, the "Diamonds") to Defendant on consignment. (*Id.* ¶ 7.) Plaintiff did so on October 13, 2003, October 15, 2003, and October 17, 2003. (*Id.* ¶ 8.) Each delivery was accompanied by a consignment memorandum (collectively, the "Memos") detailing the dollar amount of the enclosed diamond shipment – $65,849.40 for the October 13 delivery, $88,339.10 for the October 15 delivery, and $35,260.00 for the October 17 delivery. (*Id.* ¶¶ 9-11; *see also* Affidavit of Luc Vets ("Vets Aff."), sworn to May 6, 2005, attached to Proposed Findings, at Exs. A-C.) Defendant endorsed each of the three Memos, acknowledging its receipt of the Diamonds and agreeing to the terms set forth in the Memos. (Compl. ¶¶ 9-11; *see also* Vets Aff. at Exs. A-C.)

Each of the Memos stated that Plaintiff retained title to the Diamonds and that the Diamonds were being delivered to Defendant for the sole purpose of examination and inspection. (Compl. ¶ 12; *see also* Vets Aff. at Exs. A-C.) The Memos also stated that the Diamonds "shall be returned to" Plaintiff "on demand" and that Defendant had no right or power to "sell, pledge, hypothecate or otherwise dispose of the Diamonds" until and unless Plaintiff agreed to such actions. (*Id.*) Further, the Memos stated that Defendant "specifically agrees to pay all costs incurred by [Plaintiff] in the enforcement of this Agreement and collection of the debt including court costs and reasonable attorneys fees." (Compl. ¶ 18; *see also* Vets Aff. at Exs. A-C.)

As of December, 2003, Defendant had not returned the Diamonds to Plaintiff, nor requested from Plaintiff the authority to sell the Diamonds to any third party. (*Id.* ¶ 13.) Plaintiff then demanded that the Diamonds be returned. (*Id.*) Defendant thereafter informed Plaintiff that it no longer had possession of the Diamonds, and that it had transferred them. (*Id.* ¶ 13-15.) After learning that Defendant had violated the terms of the Memos by transferring the Diamonds without Plaintiff's consent, Plaintiff demanded, several times, immediate payment of the amounts set forth on the Memos. (*Id.* ¶¶ 14-16.) Despite Defendant's continual representations that it would pay the balance due in full, it failed to pay to Plaintiff the total amount owed pursuant to the Memos, specifically, $189,448.50 plus interest. (*Id.* ¶¶ 16-17.)

Accordingly, Plaintiffs seek a default judgment in the amount of $189,448.50 plus pre-judgment interest on that amount (*see* Proposed Findings at ¶¶ 22, 26, 29, 31; *see also* Vets Aff. ¶ 12 (conceding that "for purposes of aiding the Court," breach occurred on December 31, 2003)), as well as attorneys' fees in the amount of $5,024.74 and costs in the amount of $365.00 (*see* Kimmel Decl. ¶¶ 4-5).

3

## DISCUSSION

Without a response from Defendant, this Court must assess whether Plaintiffs have provided a sufficient basis for the Court to determine damages. *Transatlantic. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997). Although "a default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability," it does not reach the issue of damages. *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (quoting *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)). In conducting an inquest, the Court accepts as true all of the factual allegations of the Complaint, except those relating to damages. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). A plaintiff must therefore substantiate a claim with evidence to prove the extent of damages. *See Trehan v. Von Tarkanyi*, 63 B.R. 1001, 1008 n.12 (S.D.N.Y. 1986) (plaintiff must introduce evidence to prove damages suffered and the court will then determine whether the relief flows from the facts) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). Although the Court may hold a hearing to assess those damages, a hearing is not required where a sufficient basis on which to make a calculation exists. *See* Fed. R. Civ. P. 55(b)(2) (court may conduct hearings on damages "as it deems necessary and proper"); *see also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (judges are given much discretion to determine whether an inquest need be held); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (Fed. R. Civ. P. 55(b)(2) "allows but does not require . . . a hearing").

## I. PLAINTIFF SHOULD BE AWARDED DAMAGES ON ITS BREACH OF CONTRACT CLAIM.

The first count of the Complaint seeks recovery from Defendant for its breach of contract, *i.e.*, its breach of the terms of the Memos. (Compl. ¶¶ 7-19.) With respect to the principal sum due under the Memos on its breach of contract claim, Plaintiff has provided this Court with a copy of each of the three Memos, which require payment from Defendant in the amounts of $65,849.40, $88,339.10, and $35,260.00, respectively, in the event that the Diamonds contained in each shipment were not returned to Plaintiff upon demand. (*See* Vets Aff. at Exs. A-C.) These documents, in combination with Vets' sworn affidavit attesting to the amount due for Defendant's failure to return the Diamonds, provide a "sufficient basis from which to evaluate the fairness" of Plaintiff's claimed damages and demonstrate the amount of indebtedness claimed by Plaintiff. *Fustok v. ContiCommodity Servs. Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *see also Marc Rich & Co.*, 951 F.2d at 508 (determining amount of default judgment without hearing where court was provided with sufficient evidence).

I therefore recommend that Plaintiff be awarded to damages in the principal amount of $189,448.50, representing the Diamonds' value, plus pre-judgment interest on that amount, pursuant to Plaintiff's breach of contract claim.[1]

---

[1] The Complaint also contains claims for conversion and account stated. (*See* Compl. ¶¶ 20-25.) Nonetheless, "[w]here a plaintiff seeks recovery for the same damages under different legal theories, only a single recovery is allowed." *Conway v. Icahn & Co.*, 16 F.3d 504, 511 (2d Cir. 1994). Here, the damages sought for the breach of contract claim are identical to those sought for the conversion and account stated claims, and the "wrongs" alleged in each claim are not separately actionable. Thus, because Plaintiff may recover damages from Defendant on its breach of contract claim, the Court need not address Plaintiff's conversion and account stated claims.

## II. AN AWARD OF PRE-JUDGMENT INTEREST IS APPROPRIATE.

Whether pre-judgment interest is awarded is considered a matter of substantive law. *Schwimmer v. Allstate Ins. Co.*, 176 F.3d 648, 650 (2d Cir. 1999) (citing *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998)). Federal courts exercising diversity jurisdiction must apply the choice of law rules of the forum state, here New York, to determine what substantive law applies. *See id.; see also* 28 U.S.C. § 1652; *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Erie R.R. v. Tompkins*, 304 U.S. 64, 74-77 (1938). New York law allows for the award of pre-judgment interest in contract cases. *See* N.Y. C.P.L.R. §§ 5001, 5002, and 5004 (McKinney 2005); *see also Shamis v. Ambassador Factors Corp.*, 2001 U.S. Dist. LEXIS 172 (D.N.Y. 2001) ("Under New York law, prejudgment interest is normally recoverable as a matter of right in an action at law for breach of contract.") (citations omitted). Such interest allows a plaintiff to be "made whole for [its] loss." *Waterside Ocean Navigation Co. v. International Navigation LTD.*, 737 F.2d 150, 154 (2d Cir.1984); *see also West Virginia v. United States*, 479 U.S. 305, 310 (1986) ("Pre-judgment interest is an element of complete compensation.") Without an agreement between the parties or statutory law to the contrary, pre-judgment interest is awarded at a rate of 9% per annum, calculated from the earliest ascertainable date on which the cause of action existed. *See* N.Y. C.P.L.R. §§ 5001 and 5004; *Marfia*, 147 F.3d at 90.

Here, Plaintiff has requested pre-judgment interest in the amount of 9% per annum on the principal sum of $189,448.50, and has suggested that interest be calculated from December 31, 2003. In light of Plaintiff's allegations that Defendant breached the terms of the Memos in December 2003, I find this date reasonable. I therefore recommend that judgment be entered in favor of Plaintiff with an award of pre-judgment interest on the principal of $189,448.50,

calculated at a 9% annual interest rate beginning on December 31, 2003, and running until the date the judgment is entered on the docket.

## III. ATTORNEYS' FEES AND COSTS

Based on the terms of the Memos, which require Defendant to pay "court costs and reasonable attorneys fees" in connection with Plaintiff's efforts to collect any "contractual debt" from Defendant under the Memos, Plaintiff also seeks an award of attorneys' fees in the amount of $5,024.74 and costs in the amount of $365.00. (*See* Proposed Findings ¶¶ 19, 26, 29, 31, *see also* Kimmel Decl. ¶¶ 4-5.)

In determining an appropriate fee award, the Court generally employs the "lodestar" method, which looks to the number of hours reasonably expended in performing the legal work at issue, and then multiplies that number by a reasonable hourly rate for counsel's services. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). When fixing a reasonable rate for attorneys' fees, courts may consider and apply "market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). The relevant "community" is the district in which the case was brought, and, in the Southern District of New York, Manhattan rates are considered the standard. *S.W. ex rel. N.W. v. Bd. of Educ.*, 257 F. Supp. 2d 600, 603-04 (S.D.N.Y. 2003) (citing *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987)).

The Second Circuit requires a party seeking attorneys' fees to support its request with contemporaneous time records that show, "for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d

7

1136, 1148 (2d Cir. 1983). In support of its request for attorneys' fees, Plaintiff has provided this type of information through the Kimmel Declaration, which annexes copies of billing statements detailing the work performed on behalf of Plaintiff by Meister, Seelig & Fein LLP, in connection with this matter. The billing statements demonstrate that two attorneys at the firm, Jeffrey A. Kimmel and Petek Gunay,[2] spent a total of 18.91 hours on this case. (*See* Kimmel Decl. at ¶ 4 and Ex. A.) These individuals' hours and the rates they charged in this case were as follows:

For work performed from March through November 2004:

    Jeffrey A. Kimmel    6.70 hours @ $315.00/hour

    Petek Gunay    9.56 hours @ $215.00/hour

For work performed from January through April 2005:

    Jeffrey A. Kimmel    0.50 hours @ 335.00/hour

    Petek Gunay    2.15 hours @ 245.00/hour

(*Id.* at Ex. A.) The services performed by the attorneys included reviewing the case file, drafting and finalizing the Complaint, reviewing default judgment documents, and participating in various telephone conferences. (*See id.*) The documented hours spent on this case appear reasonable.

With respect to the hourly rates requested for Plaintiffs' attorneys, Plaintiffs have failed to submit evidence concerning either the experience level of the attorneys who worked on the

---

[2] The billing statements do not name the individuals who performed the services detailed in the statements. Rather, the statements only reflect two sets of initials, JAK and PG, in connection with the services performed. The Court assumes, however, that the initials refer to Jeffrey A. Kimmel and Petek Gunay, the attorneys listed on the first page of the Kimmel Declaration.

8

case or the prevailing market rate in this district for similar work. Nevertheless, the Court has ample discretion to determine whether the hourly rates that Plaintiffs request for their attorneys are reasonable. *See Miele v. N.Y. State Teamsters Conference Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987) (holding that court may rely on its own knowledge of prevailing rates in community to determine reasonable hourly rates); *Jones v. Amalgamated Warbasse Houses, Inc.*, 721 F.2d 881, 885 (2d Cir. 1983) (holding that court may look to other recent decisions to determine reasonable hourly rates).

By independently conducting a search on www.martindale.com, the Court has determined that Mr. Kimmel is a member of the law firm of Meister, Seelig & Fein LLP, while Mr. Gunay appears to be a mid-level associate at the firm. Based upon this information, as well as the submitted attorney records and the Court's familiarity with prevailing law firm rates in the New York City area, the requested attorneys' fees for work actually performed by Mr. Kimmel and Mr. Gunay fall within the range of what is reasonable for this market. Plaintiff, however, appears to have incorrectly calculated the total amount of fees incurred in this matter based on the hours worked by, and the varying hourly rates of, Mr. Kimmel and Mr. Gunay, as detailed above. By the Court's calculation, the total amount of attorneys' fees incurred by Plaintiff based on the submitted billing statements is $4,860.15, and not, as Plaintiff represents, $5,024.74. (*See* Proposed Findings ¶¶ 26, 29, 31; *see also* Kimmel Decl. ¶ 4 and Ex. A.) Accordingly, I recommend that Plaintiff be awarded attorneys' fees in the amount of $4,860.15.

Additionally, Plaintiff requests $365.00 to cover filing and process server fees. (*See* Proposed Findings ¶¶ 26, 29, 31; Kimmel Decl. ¶ 5 and Ex. B.) As this cost appears reasonable, I recommend that Plaintiff also be awarded $365.00 in costs.

## CONCLUSION

For the foregoing reasons, I recommend that Plaintiff be awarded:

   (1)   damages in the amount of $189,448.50;

   (2)   prejudgment interest in the amount of 9% per annum on $189,448.50, to be calculated from December 31, 2003, until the date judgment is entered on the docket;

   (3)   attorneys' fees in the amount of $4,860.15; and

   (4)   costs in the amount of $ 365.00.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, United States Courthouse, 40 Centre Street, Room 410, New York, New York, 10007, and to the chambers of the undersigned, United States Courthouse, 40 Centre Street, Room 631, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Daniels. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-*

*CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
February 10, 2006

Respectfully submitted,

*/s/ Debra Freeman*

DEBRA FREEMAN
United States Magistrate Judge

Copies Mailed To:

Jeffery A. Kimmel, Esq.
Meister, Seelig & Fein, L.L.P.
708 Third Avenue, 24th Floor
New York, NY 10017

Dynasty Diamond & Jewelry Group Corp.
8 East 48th Street
New York, NY 10017